NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 6 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IDANIA PATRICA ARCHILA-PORTILLO; et al., <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No.   20-71605 <br><br> Agency Nos.   A203-607-953 <br> A203-607-954 <br> A203-607-955 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 2, 2021
Pasadena, California

Before:  PAEZ, CALLAHAN, and OWENS, Circuit Judges.

Idania Patricia Archila-Portillo ("Archila-Portillo") and her two daughters,

Idania Michelle Ponce-Archila and Genesis Nicolle Ponce-Archila[1], petition for

review of the Board of Immigration Appeals' ("BIA") order dismissing their

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] Because Archila-Portillo's daughters are derivative beneficiaries of her asylum application, our references to "Archila-Portillo" also include her daughters unless otherwise indicated.

appeal from a decision of an Immigration Judge ("IJ") denying Archila-Portillo's application for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and ordering them removed to Honduras under 8 U.S.C § 1182(a)(7)(A)(i)(I).

We grant the petition in part, deny it in part, and remand for further proceedings. We have jurisdiction under 8 U.S.C. § 1252(a)(5). Where the BIA adopts and affirms the IJ's decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), as here, we review the IJ's decision to the extent it is adopted by the BIA. *Joseph v. Holder*, 600 F.3d 1235, 1239-40 (9th Cir. 2010).

1. Archila-Portillo argues that she should be classified as an "alien present in the United States without being admitted or paroled" under 8 U.S.C § 1182(a)(6)(A)(i) because she entered the United States before allegedly being coerced by the Department of Homeland Security ("DHS") into conceding her removability under 8 U.S.C § 1182(a)(7)(A)(i)(I). The BIA declined to address this argument, noting that DHS' decision to remove Archila-Portillo to Mexico pursuant to the Migrant Protection Protocol was a matter committed to DHS' prosecutorial discretion and not subject to the BIA's review. Because Archila-Portillo is removable under either statute, she is unable to show that the outcome of her proceeding was affected by DHS charging her as removable under 8 U.S.C §

1182(a)(7)(A)(i)(I) instead of 8 U.S.C § 1182(a)(6)(A)(i).  As a result, the BIA did not err in declining to address the merits of this issue.

2.  Archila-Portillo seeks asylum and withholding of removal on the basis of the persecution she experienced on account of her membership in a particular social group.  To demonstrate membership in a particular social group, "[t]he applicant must 'establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'"  *Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). Archila-Portillo alleged that she was a member of six different social groups, namely**:** 1) "women in Honduras"; 2) "single women in Honduras"; 3) "Honduran business owners and operators"; 4) "Hondurans who have taken concrete steps to oppose the gangs"; 5) "returnees from the U.S. to Honduras"; and 6) Hondurans who have a "political opinion that is imputed to them as being anti-gang and/or . . . anti-patriarchal."[2]

In concluding that the proposed gender-based social groups were not cognizable, the IJ relied on the now-vacated *Matter of A-B-*, 27 I. & N. Dec. 316

---

[2] In discussing nexus, the IJ separately addressed the proposed social groups of 1) Hondurans who have a political opinion that is imputed to them as being anti-gang and 2) Hondurans who have a political opinion that is imputed to them as being anti-patriarchal.  Accordingly, we consider each independently in our analysis.

(A.G. 2018) ("*A-B-I*").  The IJ understood *Matter of A-B-I* to foreclose gender as a basis for a particular social group.  Attorney General Garland has since vacated *Matter of A-B-I* and the subsequent decision in *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) ("*A-B-II*") in their entirety and instructed IJs and the BIA to "no longer follow *A-B-I* or *A-B-II* when adjudicating pending or future cases."  *Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021) ("*A-B-III*").  Thus, Archila-Portillo's gender-based claims must be remanded to the agency for reconsideration of their cognizability under pre-*Matter of A-B-I* law.  This includes Archila-Portillo's proposed social group based on anti-patriarchal political opinion, as the IJ found that it was "really gender attempted to be rearticulated in the context of a political opinion" and thus failed for the same reasons as Archila-Portillo's other gender-based groups.

3.  Archila-Portillo also must show a causal connection between the harm she suffered and a protected social group.  For purposes of asylum, she must show that a protected ground "was or will be at least one central reason" for persecution. 8 U.S.C § 1158(b)(1)(B)(i).  For withholding of removal, she must show that a protected ground is a "reason" for threats to her life or freedom.  *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).  The BIA concluded that the IJ properly determined that Archila-Portillo failed to establish a nexus between her past harm and fear of future harm and her membership in any of the gender-based

4

groups. The government argues that we should affirm the BIA's denial of those claims on that basis. We conclude, however, that the issue of nexus should also be remanded to the agency for further consideration. If the BIA determines that any of Archila-Portillo's gender-based groups are cognizable, the harm she experienced and the related record evidence documenting the violence against women in Honduras should be evaluated in light of the particular cognizable social group(s). On remand, the parties should be allowed to address both cognizability and nexus. We express no views on either cognizability or nexus.

As to Archila-Portillo's other bases for asylum and withholding of removal, we deny the petition for review. The IJ found that the proposed social groups of "Honduran business owners and operators" and "Hondurans who have taken concrete steps to oppose the gangs" lacked "particularity and [] social distinction" and were "amorphous and [lacking in] definable boundaries." And for the proposed social group of "returnees from the U.S. to Honduras," the IJ found that it had no "definable boundaries." The IJ's findings on particularity and social distinction for these social groups were supported by substantial evidence. Further, the IJ found that the proposed social group of Hondurans who have a "political opinion that is imputed to them as being anti-gang" lacked nexus because the evidence did not show that any harm Archila-Portillo experienced was on account of her anti-gang actions. This finding is also supported by substantial evidence.

5

4. To qualify for CAT relief, Archila-Portillo must establish that it is more likely than not that she would be tortured if returned to Honduras. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (citing 8 C.F.R. § 208.16(c)(2)). Torture must be inflicted by, at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003) (citing 8 C.F.R. § 208.18(a)(1)).

The IJ denied CAT relief because "[t]he past harm that the [Archila-Portillo] family has faced or that they might face in the future has not been shown to be at the instigation of or with the consent or acquiescence of a government official or other person acting in an official capacity in Honduras." Although the IJ referred to Archila-Portillo's testimony that the police had been ineffective in investigating the crimes perpetuated against her family, he determined that the evidence did not establish that the government and Mara 18 gang were working together in any capacity. On appeal, Archila-Portillo points to record evidence that she and her daughters have been identified by Mara 18 as targets for rape and death, police did not arrest anyone for her husband's murder, and the government in Honduras has a long history of allowing violence against women. But this evidence is insufficient to undermine the IJ's finding that the evidence does not establish acquiescence by the government in Mara 18's actions.

6

Although the police may not have pursued a thorough investigation of the murder of her husband, "a general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016). Notably, there is no record evidence that the police were alerted to, and refused to investigate, reports related to Mara 18. This is significant, as generalized reports of violence in Honduras cannot establish that, upon return to Honduras, Archila-Portillo and her daughters would more likely than not experience torture. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet [the CAT] standard."). Accordingly, we deny the petition as to Archila-Portillo's CAT claim.

Additionally, Archila-Portillo's motion for a stay of removal is granted. Archila-Portillo's removal is stayed pending issuance of the mandate.

The petition for review is **GRANTED** in part, **DENIED** in part, and **REMANDED**. The parties shall bear their own costs on appeal.